UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT EISENBERG of CRS
CAPSTONE PARTNERS, LLC,
as Receiver for SILVER BIRCH     Civil Action No. 22-cv-11744
SYSTEMS LLC, TELEESCROW,         HON. BERNARD A. FRIEDMAN
INC., and NYLA PRODUCTIONS,
LLC,

        Plaintiff,

vs.

ALTERNA CAPITAL SOLUTIONS,
LLC,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

I.    Introduction

    Scott Eisenberg, the court-appointed receiver for Silver Birch Systems LLC and Teleescrow, Inc. (the "Receiver"), commenced this fraudulent conveyance action against Alterna Capital Solutions, LLC. The complaint seeks to recoup approximately $3.1 million that Silver Birch and/or Teleescrow allegedly paid to Alterna to satisfy the personal debt of one of Silver Birch's principals, Louis Arriola.

    Before the Court is Alterna's motion to dismiss the complaint. (ECF No. 7). The Receiver responded. (ECF No. 10). Alterna filed a reply. (ECF No. 11). The

Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will deny the motion.

II. Background

    A. *Factual History*

This lawsuit opens another front in the Receiver's ongoing efforts to locate and recover assets belonging to Silver Birch and Teleescrow. Beginning in September 2021, Silver Birch executed both a loan agreement and a promissory note with Crestmark, a division of Metabank National Association, to obtain a $10 million line of credit for its telecommunications business. (Case No. 22-cv-10092, ECF No. 1, PageID.2-3, ¶¶ 7-8). Silver Birch's chief executive officer, Daniel T. Oshatz, personally guaranteed Silver Birch's "obligations and liabilities" under both the loan agreement and the note. (*Id.*, PageID.3, ¶ 9).

The parties' loan documents required Silver Birch to repay the principal, along with interest, to Crestmark in monthly installments. (*Id.*, PageID.4, ¶¶ 13-14). Silver Birch agreed to establish a lockbox account with a third-party escrow agent, where it was supposed to deposit all its customer receipts. (*Id.*, ¶ 15). The escrow agent would then remit the lockbox proceeds to Crestmark as repayment on the loan. (*Id.*, ¶ 16). Crestmark retained Teleescrow to perform this function. (*Id.*).

By January 2022, though, Silver Birch defaulted on its repayments as well as the other loan terms. (*Id.*, PageID. 5-6, ¶¶ 22, 24, 26, 29; Case No. 22-cv-10092,

2

ECF No. 1-1, PageID.39-43). Crestmark sued Silver Birch and Oshatz, alleging that they breached the loan documents. (Case No. 22-cv-10092, ECF No. 1, PageID.7-10, ¶¶ 34-51). At the same time, Crestmark moved to place Silver Birch into a receivership. (Case No. 22-cv-10092, ECF No. 5). The Court granted that motion and later expanded the receivership to cover Teleescrow.[1] (Case No. 22-cv-10092, ECF Nos. 39, 78).

The Receiver's investigation into Silver Birch and Teleescrow revealed a convoluted interrelationship between the two companies. Among his most significant discoveries, the Receiver found that: (1) Louis Arriola controlled Silver Birch's operations, not its chief executive officer, Oshatz (Case No. 22-cv-10092, ECF No. 58-3, PageID.1092, ¶ 6), (2) Silver Birch's officers doubled as Teleescrow's officers (*Id.*, PageID.1096-97, ¶ 27), and (3) Silver Birch did not maintain its own bank account; the company received and dispensed funds exclusively through Teleescrow's account with Metropolitan Commercial Bank (the "MCB account"). (*Id.*, PageID.1093 n.2).

---

[1] The Court extended the receivership to encompass a third entity, NYLA Productions, LLC. (Case No. 22-cv-10092, ECF No. 78, PageID.1434, ¶ 2). NYLA claims to be a movie and television production company that Arriola founded in October 2016. (*Id.*, ECF No. 58-14, PageID.1310; ECF No. 58-20, PageID.1341-42). Millions of dollars exchanged hands between NYLA and Silver Birch from January 2021 through January 2022. (*Id.*, ECF No. 58-12, PageID.1181-1286).

The Receiver also uncovered something else. In August 2020, Alterna sued Arriola in a California federal district court for breaching a surety agreement on behalf of a telecommunications company, LDI Networks, Inc. (ECF No. 1-5, PageID.382-419). The complaint asserted that Arriola failed to honor LDI's outstanding debt to Alterna in the amount of $6.5 million. (*Id.*, PageID.383, ¶ 3, PageID.413-19). The parties eventually stipulated to dismiss the case without prejudice in September 2020. (ECF No. 1, PageID.7, ¶ 20).

But less than five months later, Silver Birch and/or Teleescrow began paying Alterna from the MCB account. From February 1, 2021 through January 11, 2022, Alterna received no less than 20 wire transfers totaling $3.1 million. (*Id.*, PageID.7-8, ¶ 22). The Receiver now contends that Arriola directed those payment to Alterna although neither Silver Birch nor Teleescrow owes money to the company. (*Id.*, PageID.8, ¶ 24-25).

B.  *Procedural History*

The Receiver initiated this lawsuit to recoup the $3.1 million from Alterna. The complaint alleges two fraudulent conveyance claims, one for actual fraud (Count I) and another for constructive fraud (Count II). (ECF No. 1, PageID.9-12, ¶¶ 27-38). Alterna moves to dismiss both claims. (ECF No. 7).

III.  Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted). The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.  Analysis

   A.  *Dismissal Is Not Warranted Merely Because the Receiver Fails to Identify Which State's Law Governs the Fraudulent Conveyance Claims*

Alterna first moves to dismiss the complaint because the Receiver does not specify which state's law governs the two fraudulent conveyance claims. (ECF No. 7, PageID.441-42).

Federal receivers may sue in the district court that appointed them "to accomplish the ends sought and directed by the suit in which the appointment was made." 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 2985 (3d ed. Apr. 2022 Update) (quoting *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899)). Any subsequent "action or suit is regarded as ancillary" to the appointing court's subject matter jurisdiction. *Id.*; *see also Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981) (stating that "the initial suit which results in the appointment of the receiver is the primary action" and "any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit.").

Crestmark's initial action against Silver Birch – the lawsuit from which the Receiver's authority originates – invokes the Court's diversity jurisdiction. (Case No. 22-cv-10092, ECF No. 1, PageID.1-2, ¶ 2). Federal courts sitting in diversity must apply the choice-of-law rules of the state where the federal district is located. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Since the Court's jurisdiction over this matter is ancillary to its diversity jurisdiction in the initial Crestmark litigation, Michigan's choice-of-law principles govern this case.

Under Michigan law, fraudulent conveyance actions like this one are classified as torts. *See Warchol v. Dynamic Control Int'l*, Nos. 322029 & 322033, 2015 Mich. App. LEXIS 1934, at *19 (Mich. Ct. App. Oct. 20, 2015); *Warner Norcross & Judd, LLP v. Police & Fire Ret. Sys.*, No. 312779, 2014 Mich. App. LEXIS 1060, at *33 (Mich. Ct. App. Jun. 10, 2014). Courts typically apply

6

Michigan law in tort cases "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286 (1997).

Ascertaining whether there is a "rational reason" to displace Michigan law involves a two-part analysis. Courts must first determine whether "any foreign state has an interest in having its law applied." *Id.* Absent "such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.* "If a foreign state does have an interest in having its law applied," however, courts must then ask whether "Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*

The Receiver's inability to pinpoint which state's fraudulent conveyance statute governs this litigation raises a choice-of-law issue, not a question about whether the claims are implausible under Rule 12(b)(6). Michigan's choice-of-law rules pose a fact-intensive inquiry that additional discovery would help to resolve. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41-44 (1st Cir. 2020) (reversing the district court's choice-of-law determination at the motion to dismiss stage after concluding that the district court would be "better positioned" to decide the issue after the parties conducted discovery); *see also Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 718-19 (6th Cir. 2015) (same); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 865 (E.D. Mich. 2009) (holding that choice-of-law analysis would be premature without limited discovery).

7

Numerous jurisdictions have a stake in this litigation, ranging from Michigan (the state where the Receiver commenced these proceedings), to Arizona (Silver Birch's state of formation and where the company's registered office is located), to New York (Teleescrow's state of incorporation and where Silver Birch's chief executive officer resides), to California (where Arriola purportedly resides), to the states where Arriola may have perpetrated the alleged fraud, and to the states where Silver Birch and/or Teleescrow's creditors are located (and where they were presumably defrauded). Developing a factual record will assist the parties with identifying information relevant to the choice-of-law calculus and addressing its two most basic inquiries: (1) which states have an interest in their law governing this case, and (2) whether any of those interests outweigh Michigan's. *See Sutherland*, 454 Mich. at 286.

Since limited discovery into the events surrounding the wire transfers from Silver Birch and/or Teleescrow to Alterna would materially advance the choice-of-law analysis, dismissal of the fraudulent conveyance claims on plausibility grounds is denied as premature. *See Foisie*, 967 F.3d at 44; *In re Onstar*, 600 F. Supp. 2d at 865.

   B.   *The Complaint's Allegations Are Particular Enough Without Identifying The Actual Transferor*

Alterna next argues that the complaint is deficient because the Receiver fails to identify whether Silver Birch or Teleescrow is the entity who transferred the $3.1 million to Alterna. (ECF No. 7, PageID.443-445).

A party "alleging fraud" must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). At the most basic level, "Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (quotation omitted). The complaint must also detail "the fraudulent scheme" and "the resulting injury."[2] *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quotation omitted).

---

[2] Whether Rule 9(b) applies to both actual and constructive fraudulent conveyance claims remains an open question among federal appellate courts. *See Foisie*, 967 F.3d at 49-50 (collecting cases). At least two circuits have applied Rule 9(b) to actual fraud claims. *See Pricaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019); *Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005). But other courts of appeals diverge over whether Rule 9(b) governs the pleading of constructive fraud claims. The Seventh and Eighth Circuits hold that it does. *See Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225, 226 n.6 (8th Cir. 2018); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997). The Fifth Circuit appears less certain of that result. *See Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 120 (5th Cir. 2019). Because the Receiver pled both fraudulent conveyance claims with sufficient particularity under Rule 9(b), and since the Sixth Circuit has yet to weigh-in on the issue, there is no need for the Court register its own views here.

9

Still, Rule 9 is not meant to "reintroduce formalities to pleading." *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016). Rule 9(b)'s particularity requirement should be considered alongside "the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). The two rules must be construed together so that Rule 9(b) does not engulf "the general principles set out in Rule 8." *Id.* (quotation omitted); *see also* 5A Wright & Miller, Federal Practice and Procedure § 1298 (4th ed. Apr. 2022). The complaint should ultimately "provide fair notice to Defendants and enable them to prepare an informed pleading responsive to the specific allegations of fraud." *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (cleaned up).

The Receiver's allegations meet this threshold. The complaint details how "Silver Birch and/or Teleescrow" made payments to Alterna from the MCB account – on Arriola's behalf – totaling at least $3.1 million. (ECF No. 1, PageID.7-8, ¶ 22). The Receiver includes a chart depicting the amount of each payment to Alterna, along with the corresponding date when the payment cleared. (*Id.*). And the complaint alleges, with sufficient particularity, how:

- The payments to Alterna were made for Arriola's benefit, who acted as an insider of Silver Birch and Teleescrow;

10

- The payments were concealed from Silver Birch and Teleescrow's creditors, who were unaware that the funds they loaned to Silver Birch were being used to repay Arriola's personal obligations to Alterna;

- The payments constituted a substantial portion of Silver Birch and/or Teleescrow's assets;

- Silver Birch and Teleescrow were designed as vehicles to permit the individuals who controlled them – including Arriola and others in concert with him – to abscond with their assets;

- Neither Silver Birch nor Teleescrow received any consideration (or anything of reasonably equivalent value) in exchange for the payments to Alterna;

- Silver Birch and/or Teleescrow were or became insolvent when they paid Alterna;

- Arriola knew that Silver Birch and/or Teleescrow were or became insolvent when they paid Alterna; and

- Silver Birch and/or Teleescrow began to make the payments shortly after Arriola settled the litigation with Alterna.

(ECF No. 1, PageID.10-11, ¶¶ 33, 37-38).

The Receiver's present inability to ascertain who actually paid Alterna from the MCB account does not run afoul of Rule 9(b). Alterna received the payments from a finite group of identified transferors, *i.e.*, either Silver Birch, Teleescrow, or both entities. Any one of these possibilities – representing a closed universe of transferors – affords Alterna "at least the minimum degree of detail necessary to begin a competent defense." *Snapp*, 532 F.3d at 504.

And the fraudulent conveyance claims benefit from yet another principle. Rule 9(b)'s particularity standard "may be relaxed where information is only within the opposing party's knowledge." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988); *see also* 5A Wright & Miller, Federal Practice and Procedure § 1298 (4th ed. Apr. 2022 Update). Easing this heightened pleading requirement "based on a party's lack of access to the facts is most appropriate . . . where the party is alleging fraud by a third-party" in the same manner the Receiver implicates Arriola. *In re Trade Partners, Inc.*, 627 F. Supp. 2d 772, 786 (W.D. Mich. 2008); *see also Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

Because Alterna should know who wired the payments from the MCB account (since it is improbable that Alterna received those disbursements anonymously) the Receiver's conjecture about the transferor's identity is particular enough to satisfy Rule 9(b).

    C.    *Remaining Contentions*

Alterna lastly questions whether the complaint plausibly establishes the substantive elements associated with each of the fraudulent conveyance claims – actual fraud (Count I) and constructive fraud (Count II). For instance, Alterna maintains that the Receiver fails to allege whether "Alterna is the initial or an intermediate transferee of the funds," whether Teleescrow acted as "a mere conduit

12

of funds that were legally owned by Silver Birch or was an initial, immediate, or mediate transferee," or whether Crestmark's claim to the funds preceded any of the payments to Alterna (which, according to Alterna, is an essential element of constructive fraud). (ECF No. 7, PageID.446-47).

But Alterna equally acknowledges that the specific elements of the fraudulent conveyance claims are unclear at this juncture because the choice-of-law issue is unresolved. (ECF No. 7, PageID.443 n.2). The most prudent course, therefore, is to furnish the parties with the opportunity to fully address which state's fraudulent conveyance statute should govern this litigation, for the Court to decide that question, and only then revisit whether the complaint plausibly demonstrates the Receiver's entitlement to relief under the appropriate substantive framework. Until that time, dismissing the fraudulent conveyance claims for any substantive reason would be premature. Accordingly,

IT IS ORDERED that Alterna's motion to dismiss the complaint (ECF No. 7) is denied without prejudice.

**IT IS SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: January 20, 2023
Detroit, Michigan

13